# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ARI OFFICER,                           )
                                       )
            Plaintiff,                 )
                                       )   No. 12 C 10195
      v.                               )
                                       )   Judge George M. Marovich
                                       )
JOHN DURAN,                            )
STRATEGIC HWY HOLDINGS LLC, and        )
ALL ROADS ENTERTAINMENT LLC,           )
                                       )
            Defendants.                )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ari Officer ("Officer") filed suit seeking the return of the $250,000.00 he

invested with defendants John Duran ("Duran") and Strategic Hwy Holdings, LLC. ("Strategic

Hwy").[1]  Plaintiff has filed a motion for summary judgment to which defendants did not respond

within the time allowed by the Court (or at all, for that matter).  For the reasons set forth below,

the Court grants in part and denies in part the motion for summary judgment.

## I.    Background

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like

considered in connection with a motion for summary judgment.  As the Court notes on its

---

[1]The Court has federal question jurisdiction over Count I, in which plaintiff seeks relief
for securities fraud under Section 10(b)(5) of the Exchange Act, 15 U.S.C. § 78j(b).  That claim
is not frivolous, so the Court has supplemental jurisdiction over the additional state-law claims
regardless of the outcome of the federal claim.  What the Court does not have (despite the
parties' assertions to the contrary) is diversity jurisdiction.  Plaintiff has not put forth evidence of
any party's citizenship (residence does not suffice, and plaintiff has put forth no evidence of the
citizenship of the members of the LLC defendants).

website, the Court enforces Local Rule 56.1 strictly. To be considered, facts must be included in a party's statement of undisputed facts. Facts argued in briefs but not included in a party's statement of undisputed facts are not considered by the Court, because to do so would rob the other party of his or its opportunity to show such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact *with citation to admissible evidence*, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of its duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

In this case, defendants did not file a response to plaintiff's statement of facts. The Court has carefully reviewed plaintiff's statement of facts and has deemed admitted only those asserted facts supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes.

The following facts are undisputed.

Defendant Duran controls two limited liability companies: defendant Strategic Hwy and defendant All Roads Entertainment LLC ("All Roads"). As the person in charge, Duran has access to information about the assets and operations of Strategic Hwy.

Plaintiff Officer came to know of Duran through his acquaintance, Ted Sturiale ("Sturiale"). At some point before February 15, 2011, Duran told Sturiale that Duran owned equity in a company called Guerilla Union, Inc. ("Guerilla Union"), a company that produces music festivals. Duran asked Sturiale if he knew anyone who might be interested in investing. Sturiale mentioned Officer, who, according to Sturiale, was a musician and a futures trader. On

February 15, 2011, Duran sent to Sturiale a Guerilla Union, Inc. Private Placement Memorandum (the "Guerilla Placement Memorandum"), which Sturiale, in turn, forwarded to Officer. The Guerilla Placement Memorandum stated that Duran owned 9,000 shares of Guerilla Union stock. Sturiale put Officer in touch with Duran. On February 22, 2011, Duran and Officer discussed by telephone Officer's potential involvement.

Then, the plan changed. On March 10, 2011, Duran told Officer that Officer could not participate in the Guerilla Union private placement, because a company was going to buy the entire offering. Duran told Officer that Officer could still acquire an equivalent number of Guerilla Union shares by investing in Duran's holding company, defendant Strategic Hwy. On March 14, 2011, Duran and Officer spoke again. Duran told Officer that Strategic Hwy owned shares of Guerilla Union stock. Duran told Officer that Officer could invest in Strategic Hwy, which could then purchase additional shares of Guerilla Union.

On March 15, 2011, Duran sent Officer an email, attached to which was a draft "Convertible Note into Guerilla Union equity" that Duran offered to Officer in exchange for his investment. The draft stated, among other things, "This Note evidences a loan from Holder to the Company in anticipation of a potential investment by holder in Guerilla Union, Inc. ('Guerilla Union'). The Company owns common stock of GU."

On March 17, 2011, Officer wrote to Duran with follow-up questions. Among other things, Officer asked for documentation that Strategic Hwy owned Guerilla Union, Inc. shares and whether the particular type of shares could be represented in the note. Duran responded that he would have his attorney include in the note the type of shares Strategic Hwy owned. As to documentation of ownership, Duran sent Officer a copy of Strategic Hwy's Operating

Agreement, which stated, "The authorized capital of the Company consist [sic] of 9,000 shares of Guerilla Union Corporation. The current market value of Guerilla Union is $1,000 per share." The next draft of the note stated, among other things, "This Note evidences a loan from Holder [Officer] to the Company [Strategic Hwy Holdings, LLC] in anticipation of a potential investment by Holder in Guerilla Union, Inc. ('GU'). The Company owns common stock (Series A2 or Founders Stock) of GU."

In reliance on Duran's representations that Strategic Hwy Holdings LLC owned Guerilla Union, Inc. shares, Officer wired $50,000.00 from his bank account in Chicago to Strategic Hwy Holdings, LLC. Both parties signed a note (the "Note"). Duran signed on behalf of Strategic Hwy, listing his title as Managing Partner.

The Note states, in relevant part:

NEITHER THESE SECURITIES NOR THE SECURITIES INTO WHICH THESE SECURITIES ARE CONVERTIBLE HAVE BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933 . . .

5% CONVERTIBLE BALOON [sic] PROMISSORY NOTE
OF
STRATEGIC HWY HOLDINGS, LLC

Issuance Date: March 23, 2011          Original Principal Amount: $50,000.00

\*          \*          \*

FOR VALUE RECEIVED, the Company hereby promises to pay to the order of Ari Officer, or its registered assigns or successors-in-interest ('Holder') the principal sum of Fifty Thousand Dollars ($50,000.00) (the 'Principal Amount') together with any accrued but unpaid interest thereon and any other amounts then owed to Holder on the earlier of March 23, 2012 or the date on which Holder's entire Principal Amount is converted into Common Stock (Series A2 Common Stock) of Guerilla Union, Inc. a California Corporation ('GU Stock'). The Company further agrees to pay interest, additional compensation and any other amounts payable to Holder when due as provided by this Note if the transfer or stock is not disturbed [sic] within the contract date.

This Note evidences a loan from Holder to the Company in anticipation of a potential investment by Holder in Guerilla Unions, Inc. ('GU'). The Company owns common stock (Series A2 or Founders stock) of GU. Accordingly, this Note is intended by the parties to be convertible by the Company, in its sole discretion, into GU Stock or an equivalent security of Guerilla Union, Inc. as described herein. In the event of a conversion, the Company shall either transfer GU Stock held by the Company or arrange for Guerilla Union to directly transfer the required amount of GU Stock to Holder. . . .

\*       \*       \*

**Section 11.       General.**

(a)       Payment of Expenses; Attorney's Fees. If a dispute under this Note leads to litigation, including, without limitation, actions to interpret the terms of this Note and actions by Holder to collect under this Note, the unsuccessful party in that litigation hereby agrees to pay all costs of collection, costs of suit, and all attorney's fees paid or incurred in enforcing the successful party's rights under this Note.

(Docket entry 72-3, Exh. E1). In short, the Note gave Strategic Hwy a year either to convert Officer's money into Guerilla Union shares or to return the money plus interest to Officer.

On August 5, 2011, Duran asked for more money when he and Officer met in Chicago. Duran told Officer that Guerilla Union had had a budget shortfall and that if Officer could invest more money, his investment would both help Guerilla Union and increase the value of Strategic Hwy's shares of Guerilla Union. On August 22, 2011, Duran sent an email to Officer, in which email Duran stated, "If possible, you can do $150,000 and it will be $200,000 investment total. If not, $125,000 will work. I already have all the paperwork and I will just send you off a confirmation." Officer replied and asked whether new paperwork was required. Duran responded in writing, "No new paperwork to sign. I will just send you a confirmation on your wire and it will be applied to current investment."

Because Officer believed Strategic Hwy owned Guerilla Union stock and because he believed Duran's statement that an additional investment would increase the value of Strategic Hwy's Guerilla Union stock, Officer wired an additional $150,000.00 from his Chicago account

to Strategic Hwy's account in California. Duran sent Officer an email, in which Duran stated, "You now have $200,000 invested into Strategic Hwy Holdings which is a holding company of founders stock of Guerilla Union and India Live. This is [sic] email is also receipt of your investment." Officer's $150,000 investment was added to the Note.

Soon, Duran wanted more money. In October 2011, Duran called Officer in Illinois and reported that he was rolling Strategic Hwy into a new entity, All Roads. (As it turns out, Duran formed All Roads on October 27, 2011. By November 30, 2011, All Roads had been dissolved.) On October 27, 2011, Duran emailed Officer a presentation document for All Roads, which document stated that All Roads owned 15% of Guerilla Union. On November 2, 2011, Duran sent Officer an email in which Duran asked Officer to invest an additional $50,000 in order to make his investment in Strategic Hwy "an even $250,000." Two days later, Duran sent Officer an email in which he asked Officer if there was "any movement" on his decision about investing more. Officer wrote back saying he could wire $50,000 and asking if he was correct that he would then have a 2.5% interest in All Roads and, thus, own .375 of Guerilla Union. Duran responded by email, "Yes."

Based on Duran's representations that Officer would own .375 of Guerilla Union, Officer wired $50,000 from his account in Chicago to Strategic Hwy's account in California. Officer would not have sent this or any money to Strategic Hwy had he known the truth: that neither Duran, nor Strategic Hwy nor All Roads owned shares of Guerilla Union stock.

Duran has never owned any shares of Guerilla Union stock, and any statement to the contrary is false.[2]  Strategic Hwy has never owned any shares of Guerilla Union stock, and any statement to the contrary is false.  All Roads has never owned any shares of Guerilla Union stock, and any statement to the contrary is false.

On September 4, 2012, Officer sent Duran an email in which he demanded the return of the $250,000 plus interest.  Officer received neither the money nor any shares of Guerilla Union stock.

Officer filed this suit.  In Count I, Officer alleges that defendants violated § 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5.  Count II is a claim for fraud.  In Count III, Officer seeks to enforce the Note.  In Count IV, Officer alleges that defendants breached an implied promise to pay.  Officer moves for summary judgment with respect to Counts I, II and III.

## II.    **Summary Judgment Standards**

Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"  Fed. R. Civ. P. 56(a).  When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party."  *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

---

[2]The facts in this paragraph were deemed admitted as a discovery sanction earlier in this case.

III.    **Discussion**

A.    **The securities claim**

First, Officer moves for summary judgment on Count I, his claim that Duran violated §
10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17
C.F.R. 240.10b-5, by making false statements in connection with the transfer of a security.  In
order to prevail on a claim under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5,
one must establish:  (1) a material misrepresentation; (2) scienter; (3) a connection with the sale
or purchase of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *Dura
Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-342 (2005).

The Court first considers whether the Note is a security.  The Supreme Court has held
that "in determining whether an instrument denominated a 'note' is a 'security,' courts are to
apply the version of the 'family resemblance' test that we have articulated here:  A note is
presumed to be a 'security,' and that presumption may be rebutted only by a showing that the
note bears a strong resemblance . . . to one of the enumerated categories of instrument [that are
not considered to be securities]."  *Reve v. Ernst & Young*, 494 U.S. 56, 67 (1990).  Here, then,
the Court begins with the presumption that the Note is a security.  Defendants (having not
responded to plaintiff's motion for summary judgment) have put forth no evidence or argument
to rebut that presumption.  Accordingly, the Court concludes that the Note is a security.

Next, it is clear as a matter of law that Duran made material misstatements and that
Officer relied on those misstatements.  Officer was interested in investing in shares of Guerilla
Union stock.  On multiple occasions (sometimes in writing), Duran informed Officer that
Strategic Hwy held shares of Guerilla Union.  That was not true.  In fact, neither Strategic Hwy

nor Duran owned shares of Guerilla Union stock. It is clear that Duran made the misstatements intending to deceive Officer.

But where plaintiff's claim falls apart is on loss causation. Plaintiff did not bother to make any argument on this element. The closest he came was in arguing (in connection with another issue) that he would not have sent money to Strategic Hwy if he had known Strategic Hwy did not own shares of Guerilla Union stock. This evidence, though, just shows transaction causation, which does not suffice. *Ray v. Citigroup Global Markets, Inc.*, 482 F.3d 991, 995 (7th Cir. 2007) ("Transaction causation is nothing but proof that a knowledgeable investor would not have made the investment in question, had she known all the facts. If the summary judgment record supports the plaintiff only on that point, and not on loss causation, then the defendant is entitled to prevail."). Instead, plaintiff must show that "but for the circumstances that the fraud concealed, the investment . . . would not have lost its value." *Ray*, 482 F.3d at 995 (quoting *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648-49 (7th Cir. 1997)). Plaintiff has not shown that the reason his Note with Strategic Hwy lost its value was that Strategic Hwy did not own shares of Guerilla Union. Regardless of whether Strategic Hwy owned shares of Guerilla Union, Officer's investment in the Note would still have had value if Strategic Hwy had either used Officer's money to purchase Guerilla Union shares for Officer or given back Officer's money with interest. That Strategic Hwy did neither is what caused Officer's loss.

Plaintiff's motion for summary judgment as to Count I is denied.

**B.     Officer's Fraud claim**

Next, Officer moves for summary judgment with respect to Count II for fraud. Essentially, Officer is claiming that Duran fraudulently induced him into making investments in

Strategic Hwy by making material misstatements.  To prevail, Officer must show:  (1) defendant made a false statement of material fact (2) that he knew to be untrue (3) for the purpose of inducing plaintiff to act; (4) that plaintiff reasonably relied on the misstatement and (5) was thereby damaged.  *Wilkinson v. Appleton*, 28 Ill.2d 184, 187 (Ill. S.Ct. 1963).

Officer has put forth sufficient evidence of fraudulent inducement, as a matter of law. Officer has put forth undisputed evidence that Duran told Officer on multiple occasions that Strategic Hwy owned shares of Guerilla Union.  Specifically, Duran told Officer verbally on March 15, 2011 that Strategic Hwy owned shares of Guerilla Union.  Duran also told Officer in writing that Strategic Hwy owned shares of Guerilla Union when Duran provided Officer a draft note, which said "[Strategic Hwy] owns common stock of GU."  When Officer requested documentation to confirm Strategic Hwy's ownership of the Guerilla Union shares, Duran provided Officer, on March 17, 2011, a written copy of Strategic Hwy's Operating Agreement, which stated that Strategic Hwy's "authorized capital" consisted "of 9,000 shares of Guerilla Union Corporation."  These were material misrepresentations in that they were undisputedly false (Strategic Hwy has never owned any shares of Guerilla Union) and in that the reason Officer was interested in Strategic Hwy was because he wanted to invest in Guerilla Union. Furthermore, Duran knew the statements were false, because he controlled Strategic Hwy and had access to information about its assets.  Officer reasonably relied on these material misstatements when he wired a total of $250,000.00 to Strategic Hwy.  With respect to the final $50,000, Officer also relied on Duran's material misstatement that Officer would own .375 of Guerilla Union.  That was not true, because none of the defendants owned any shares of Guerilla Union.  Duran fraudulently induced Officer to wire $250,000.00 to Strategic Hwy.

The Court concludes that there are no genuine disputes of fact and that Officer is entitled to judgment as a matter of law on Count II. The Court grants plaintiff's motion for summary judgment as to Count II.

This leaves plaintiff with a choice of remedies: he can either rescind the contract and have his consideration returned to him or he can elect to have the contract performed and obtain damages under the contract. *On Command Video Corp. v. Roti*, Case No. 09 C 3130, 2010 WL 2740309 at *2 (N.D. Ill. July 12, 2010) ("Contracts induced by fraud are voidable at the election of the defrauded party. A claim of fraudulent inducement has one of two remedies: rescission of the contract, or performance and a lawsuit for damages."); *Wilbur v. Potpora*, 123 Ill.App.3d 166, 171-72 (Ill.Ct.App. 1st Dist. 1984) ("One induced to contract through fraud may at his election rescind the contract and recover the consideration that he has paid or affirm the contract and recover" on a claim for breach of contract.).

It appears to the Court that plaintiff has elected to rescind the contract and recover his consideration, based on the fact that, in his complaint, plaintiff described his claim for breach of contract as being "In The Alternative." (Plaintiff's Complt. at 20). Thus, as remedy, the Court awards rescission of the contract. In order to put plaintiff back in the position he was in before he was fraudulently induced into the contract, the Court awards Officer rescissory damages in the amount of $250,000.00 (the amount of consideration he paid) plus pre-judgment interest of $33,855.99. Duran and Strategic Hwy shall be jointly and severally liable for the damages and pre-judgment interest, because Duran committed the fraud and because Strategic Hwy received the consideration that supported the now-rescinded contract.

**C.   Officer's claim to enforce the Note.**

Finally, Officer moves for summary judgment on Count III (his claim to enforce the Note).  Because Officer prevailed on his claim for fraudulent inducement, he cannot also prevail on a claim for breach of contract.  Accordingly, his motion for summary judgment on Count III is denied.

## IV.   <u>Conclusion</u>

For the reasons set forth above, the Court grants in part and denies in part plaintiff's motion for summary judgment.  The Court grants summary judgment in favor of plaintiff Officer and against defendants Duran and Strategic Hwy on Count II.  The Court awards rescission of the contract whereby Officer invested $250,000.00 in Strategic Hwy and awards Officer rescissory damages in the amount of $250,000.00 plus pre-judgment interest of $33,855.99.  Duran and Strategic Hwy are jointly and severally liable.   The Court finds that there is no just reason for delay and will enter a final judgment as to Count II against defendants Duran and Strategic Hwy.

It is not clear to this Court whether plaintiff wishes to proceed on his remaining claims.  As explained above, plaintiff cannot, as a matter of law, pursue Count III.  If plaintiff wishes to proceed on his remaining claims, he should appear (by counsel) at a status hearing on December 23, 2014 at 11:00 and so report.  If he fails to appear, Count III will be dismissed with prejudice and the remaining claims will be dismissed without prejudice.

ENTER:

George M. Marovich
United States District Judge

DATED:  October 27, 2014